HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

PLAINTIFFS *IN PRO PER*



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANA HILSENRATH, OLIVER HILSENRATH<br><br>Plaintiffs,<br><br>v.<br><br>CREDIT SUISSE (CS), UNITED BANK OF SWITZERLAND (UBS) AND DOES 1-10<br><br>Defendants. | Case No: C 07 5374<br><br>COMPLAINT FOR DAMAGES, STRICT PRODUCT LIABILITY AND FAILURE TO WARN<br><br>Jury Trial Demand |

## INTRODUCTION

1. Plaintiffs Hana and Oliver Hilsenrath, US citizens and residents of the state of California, respectfully submit this current complaint in pro per. Defendants' actions have turned hired legal representation inaccessible.

2. Plaintiffs have saved and invested almost every Dollar earned since 1993 in two reputable Swiss banks, between the largest banks of the World: Credit Suisse and UBS.

3. In 2005 the Swiss government froze the Hilsenraths' accounts at Credit Suisse and UBS under a suspicion of alleged criminal acts in California.

4. In 2006, the US government and the US Federal Court determined that there was no basis to the allegations and requested the Swiss government to release all assets under freeze.

5. Till 2007, the Swiss authorities refused to release the assets.
6. In May 2007, the Hilsenraths and others filed a complaint in the District Court of California against the Swiss government *inter alia* for unlawfully confiscating their assets.
7. In their first appearance in federal Court, the Swiss government claimed that it is not bound by the United States' Constitution and its provisions for protection of property as stipulated by the 4th, 5th and 6th amendments.
8. Plaintiffs Hana and Oliver Hilsenrath are subsequently filing this complaint against the Swiss banks Credit Suisse and UBS for an order to:

(1) Compel the banks to alert their present and prospective US clients by means of a product-warning label that the banks cannot guarantee the banks' compliance with the United States' Constitution and its provisions to protect constitutional rights to property, and

(2) To compel the banks to compensate the plaintiffs for the losses incurred as the result of not having been timely alerted about the inability of the banks to guarantee their clients' rights to property as granted by the United States' Constitution.

### THE PARTIES, JURISDICTION AND VENUE

9. Plaintiffs are professionals and citizens of the state of California.
10. Defendants are corporations with operations all over the United States.
11. The Federal court has jurisdiction over this case and the venue in the Northern District of California is adequate pursuant to *28 U.S.C. 1331, § 1332*.
12. The remedy required in the form of a product-warning label is a remedy to be applied in all the States in which the banks have operations including foreign operations catering to US clientele.

### GENERAL ALLEGATIONS

13. In 1993 and 2001 plaintiffs opened joint accounts with Credit Suisse and UBS respectively. Most of plaintiffs' family savings were invested and managed in the two banks.
14. In April 2005 the US government asked the Swiss government to freeze plaintiffs' accounts in the above banks as part of a criminal investigation - [Case 3:03-cr-00213-WHA USA v.

Hilsenrath, et al]. The US government initially alleged embezzlement of funds by Oliver Hilsenrath and the transfer of the allegedly embezzled funds to the two-abovementioned banks.

15. In 2006, the US government concluded that the allegations of embezzlement were in error and requested the Swiss government to release the hold on plaintiffs' accounts and assets.

16. The District court/northern district of California issued two orders requesting the release of the improperly held assets. The Court stated [EXHIBITS A, B]:

> 21 August 2006 Order-District Court: "The United States federal government has now concluded that these frozen assets were not embezzled or stolen. The United States Federal government has also concluded that these frozen assets were not the proceeds of a securities fraud offense.
> The Court requests that the Swiss investigating magistrates withdraw their requests for freezes made to other European jurisdictions."
>
> 13 Nov 2006 Order-District Court: "The Court clarifies that there is no other mechanism (other than the issuance of this order) to pronounce on the propriety of the asset freeze. If the assets had been frozen in the United States, and the Court issued a similar order holding that there was no probable cause to freeze the assets, then the assets would have to be released and returned to Mr. Hilsenrath.
> The Court asks the Swiss examining magistrates to deem it's August 21, 2006, order a final order, not subject to any other judgment or plea. Consequently, the Court reiterates its request to the Swiss authorities to release Mr. Hilsenrath's frozen funds and to withdraw their requests for freezes made to other European countries, to the extent that the Swiss authorities' freeze of assets is attributable to their mistaken conclusion that there are violations of U.S. law that justify Swiss money laundering charges."

17. The Swiss government refused to return the funds without articulating a legal basis and without any adjudication.

18. In May 2007, plaintiffs filed a complaint against the Swiss government and a number of its employees for confiscating their assets in violation of plaintiffs' constitutional rights, namely the 4th, 5th and 6th amendment [Case 3:07-cv-02782-WHA Hilsenrath et al v. The Swiss Confederation et al].

19. At its first appearance in US federal court, the Swiss government and its employees asserted that the United States' Constitution, its amendments and its provisions protecting the right to property do not obligate them.

20. Plaintiffs assert that had they known that the Swiss banks catering to US persons are not obligated to their constitutional rights, such as the fundamental right to property, they would not have invested their assets in the two reputable banks and therefore would not have incurred financial losses.

21. The banks' duty to warn continues even after the initial opening of the accounts. If new information become available, such as through other clients' experiences, the banks should have update their warnings to plaintiffs and other clients, either through direct contact or, if that was not possible, through mass media publication.

22. In sum, the banks allowed plaintiffs and other clients, and are continuing to solicit thousands, to keep their funds in Swiss banks that are subject to one of the most dangerous financial jurisdictions of the world, a jurisdiction that (in it's own words) does not abide to the right to property as stipulated by the United States' Constitution.

23. In its pleadings in Federal Court/Northern District of California the Swiss government and employees stated as follows:

> *[Case 3:07-cv-02782-WHA Hilsenrath et al v. The Swiss Confederation et al]:*
>
> <u>On 10/11/07:</u> **"Finally, the Complaint fails to state a claim because the U.S. Constitution does not apply to actions of the Swiss Government and Swiss Government officials taken within Switzerland."**
>
> <u>And On 8/6/07:</u> **The acts of a foreign government within its own territory are not subject to the limitations of the US Constitution including the Fourth, Fifth, Sixth and Fourteenths Amendments. (Neither the Fourth Amendment of the United States Constitution nor the exclusionary rule of evidence, designed to deter Federal officers from violating the Fourth Amendment, is applicable to the acts of foreign officials.)**

24. Plaintiffs therefore ask the court to compel Credit Suisse and UBS to make that information available through a product-warning label to warn US persons of the risk of investing in banks that are not subject, or cannot commit to, their constitutional rights to property.

**FIRST CAUSE OF ACTION (product-warning label)**

Plaintiffs incorporate each of the above paragraphs by reference.

25. Plaintiffs opened accounts with the above banks under the clear understanding, and not alerted otherwise, that the banks adhere to principles of right to property such as the ones specified by the UNITED STATES' Constitution, or equivalent.
26. In 2007 with the appearance of the Swiss government in district court in California, it was revealed for the first time by statement of the Swiss government that the Swiss government and subsequently the Swiss banks are not obligated by the rights to property as stipulated by the United States' Constitution and in fact violated the rights of the plaintiffs to their property kept in the abovementioned banks.
27. Plaintiffs therefore request this court to order Credit Suisse and UBS to add a product-warning label to all their products and advertisement, catering directly and indirectly to US persons, in order to alert such US persons that Credit Suisse and UBS do not, or cannot respect the rights to property as stipulated by the United States' Constitution.

WHEREFORE, defendants pray relief as set forth below.

**SECOND CAUSE OF ACTION (repayment of damages)**

Plaintiffs incorporate each of the above paragraphs by reference.

28. Plaintiffs incurred damages of $7.5 million deposited in the two banks due to their lack of awareness that Credit Suisse and UBS do not adhere to the constitutional right to property.
29. Plaintiffs are entitled to be compensated by defendants in the amount of $7.5 million and prejudgment interest from the time they were mislead to invest in the two banks without warning of the abovementioned risks.

WHEREFORE, defendants pray relief as set forth below.

**THIRD CAUSE OF ACTION (other damages)**

Plaintiffs incorporate each of the above paragraphs by reference.

30. Plaintiffs incurred additional significant damages as the result of their lack of access to the funds held in the two banks and invested there, unaware of property risks as stated above.

31. Plaintiffs are entitled to be compensated by defendants in an amount according to proof.

WHEREFORE, defendants pray relief as set forth below.

**PRAYER**

By way of this complaint plaintiffs pray relief as follows:

32. That this Court order defendants to display a product-warning label in all direct and indirect solicitations or advertisings targeted to US persons, specifically stating that the banks are not subject to US constitutional rights of property such as the 4th, 5th and 6th amendment of the United States' Constitution

33. That this Court order defendants to compensate plaintiffs for all assets invested in the banks and lost, while unaware of the aforementioned property risks, in an amount not less than $7.5 million.

34. That this Court order defendants to pay prejudgment interest in an amount according to the time passed from plaintiffs' unwarned investments in the banks.

35. That this Court further order defendants to compensate plaintiffs for other damage and losses resulting from plaintiffs' lack of access to their savings according to proof.

36. That this Court award such other and further relief as it deems proper.

Dated: October 22, 2007

Respectfully submitted,

OLIVER HILSENRATH
Plaintiff *PRO SE*

_____/s/ Oliver Hilsenrath_____


HANA HILSENRATH
Plaintiff *PRO SE*


_____/s/ Hana Hilsenrath_____


//ATTACHMENTS A, B//

# ATTACHMENT A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>OLIVER HILSENRATH,<br><br>　　　　　　Defendant. | No. CR 03-0213 WHA<br><br>[PROPOSED] ORDER REGARDING THE SWISS AND EUROPEAN FREEZE OF OLIVER HILSENRATH'S FUNDS<br><br>Hearing Date: August 21, 2006 |

　　　This Court makes the following findings pursuant to Federal Rule of Civil Procedure 65:

1.  In 2005, the federal government of the United States asked the government of Switzerland to freeze assets of Oliver Hilsenrath.

2.  Almost all of the assets are attributable to the sale of 350,000 shares of U.S. Wireless stock that Oliver Hilsenrath acquired legitimately.

3.  In response to an inquiry from the Swiss authorities, the U.S. government told the Swiss authorities that while the 350,000 shares of U.S. Wireless stock at issue were obtained legitimately, it believed that the shares may have been transferred in violation of U.S. securities laws (even though those securities law violations were not charged in the U.S. case.

4.  After these American requests, Swiss investigating magistrates (or "prosecutors) wrote to other European jurisdictions. The Swiss investigating magistrates requested that Hilsenrath's assets

1           in those European jurisdictions also be frozen.

2   5.    The United States federal government has now concluded that these frozen assets were not embezzled or stolen. The United States federal government has also concluded that these frozen assets were not the proceeds of a securities fraud offense. Thus, the United States withdrew its request to Switzerland to freeze assets.

6.     The continuing restraint of Hilsenrath's assets in Switzerland and Europe is preventing him from hiring the counsel of his choice. This is causing a significant delay of two large federal cases before this Court: the criminal prosecution, and a related S.E.C. civil case. This delay is very inconvenient to the Court and to the parties.

The Court accordingly holds the following:

1.     There was no probable cause to support the pretrial restraint of assets attributable to the 350,000 shares when the MLAT requests for a freeze were sent to Switzerland in 2005;

2.     The continued freeze requires, for some limited term, a continuance of the criminal trial to permit Hilsenrath to attempt to recover his assets and retain counsel;

3.     To the extent that the Swiss authorities' independent freeze of the assets is attributable to the Swiss authorities' conclusion that there are violations of U.S. law that justify Swiss money laundering charges, the Court respectfully requests the Swiss investigating magistrates to release the funds frozen at the request of the U.S. government. The Court further requests that the Swiss investigating magistrates withdraw their requests for freezes made to other European jurisdictions.

IT IS SO ORDERED.

August 21, 2006
Dated



WILLIAM ALSUP
United States District Court Judge

*Hilsenrath*, CR 03-0213 WHA
ORD. RE: FROZEN ASSETS               2

# ATTACHMENT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 03-0213 WHA |
| Plaintiff, | ORDER |
| v. | |
| OLIVER HILSENRATH, | |
| Defendant. | |

On August 21, 2006, the Court issued an order holding the following:

1. There was no probable cause to support the pretrial restraint of assets attributable to the 350,000 shares when the MLAT requests for a freeze were sent to Switzerland in 2005;

    \*   \*   \*

3. To the extent that the Swiss authorities' independent freeze of the assets is attributable to the Swiss authorities' conclusion that there are violations of U.S. law that justify Swiss money laundering charges, the Court respectfully requests the Swiss investigating magistrates to release the funds frozen at the request of the U.S. government. The Court further requests that the Swiss investigating magistrates withdraw their requests for freezes made to other European countries.

ORDER (CR 03 213 WHA)

The United States has advised the Court that the Swiss authorities have suggested that because the Court's order is not a judicial decision such as a plea or a sentencing, it is not a final or sufficient order to release the frozen assets.

The Court issues this order to clarify the following:

1. The U.S. government has investigated the matter of Mr. Hilsenrath's acquisition and sale of 350,000 shares of U.S. Wireless Corporation and has concluded that there are no violations of U.S. law other than tax evasion charges.

2. Accordingly, the U.S. government has decided not to bring charges about the 350,000 shares, except for the tax evasion charges.

3. The U.S. government informed the Swiss authorities that allegations in the MLAT requests – that the 350,000 shares were acquired unlawfully – were inaccurate.

4. The Court clarifies that there is no other mechanism (other than the issuance of this order) to pronounce on the propriety of the asset freeze. If the assets had been frozen in the United States, and the Court issued a similar order holding that there was no probable cause to freeze the assets, then the assets would have to be released and returned to Mr. Hilsenrath.

5. The Court asks the Swiss examining magistrates to deem its August 21, 2006, order a final order, not subject to any other judgment or plea.

6. Consequently, the Court reiterates its request to the Swiss authorities to release Mr. Hilsenrath's frozen funds and to withdraw their requests for freezes made to other European countries, to the extent that the Swiss authorities' freeze of assets is attributable to their mistaken conclusion that there are violations of U.S. law that justify Swiss money laundering charges.

IT IS SO ORDERED.

DATED: November 13, 2006

WILLIAM H. ALSUP
United States District Judge

ORDER (CR 03 213 WHA)                2