# EXHIBIT 1

United States District Court

For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   HANA HILSENRATH, OLIVER                     No. C 07-02782 WHA
     HILSENRATH, NAMA HILSENRATH,
11   LIOR HILSENRATH, ELLA HOPE
     HILSENRATH, ISAIAH BENJAMIN               **ORDER GRANTING
12   HILSENRATH, SAUL NATHANIEL               DEFENDANTS' MOTION TO
     HILSENRATH, and THE LIVING TRUST OF      DISMISS AND VACATING
13   MELANIE AND ANDRE HILSENRATH,            HEARING**

14             Plaintiffs,

15     v.

16   THE SWISS CONFEDERATION, THE
     FEDERAL ATTORNEY GENERAL OF
17   SWITZERLAND, GERARD SAUTEBIN,
     BRENT HOLTKAMP, and DOES 1–10,
18
               Defendants.
19   _____/

20

21                         **INTRODUCTION**

22          Pro se plaintiffs sued defendants for freezing plaintiffs' assets during a criminal

23   investigation.  Defendants the Swiss Confederation, the Federal Attorney General of

24   Switzerland, Gerald Sautebin, and Brent Holtkamp (the "Swiss Defendants") move to dismiss

25   the complaint.  Plaintiffs are Hana Hilsenrath, Oliver Hilsenrath, Nama Hilsenrath,

26   Lior Hilsenrath, Ella Hope Hilsenrath, Isaiah Benjamin Hilsenrath, Saul Nathaniel Hilsenrath,

27   and the Living Trust of Melanie and Andre Hilsenrath.  The Swiss Defendants claim that

28   (i) the Court lacks personal jurisdiction over them because of improper service by plaintiffs;

United States District Court

For the Northern District of California

1   (ii) the Court lacks subject matter jurisdiction over plaintiffs' claims because the Swiss

2   Defendants are entitled to sovereign immunity under the Foreign Sovereign Immunities Act;

3   (iii) the Court lacks personal jurisdiction over defendants Sautebin and Holtkamp due to these

4   defendants' lack of sufficient contacts with the United States and California; (iv) plaintiffs'

5   claims are barred under the Act of State Doctrine; and (v) plaintiffs' constitutional claims fail

6   because the acts complained of were taken by a foreign government in Switzerland.  For the

7   reasons stated below, defendants' motion to dismiss is **GRANTED**.

8                                       **STATEMENT**

9           Plaintiffs are United States citizens who reside in California (Compl. at ¶ 16).

10  In April 2005, the Swiss authorities issued an international arrest warrant for Oliver Hilsenrath

11  (*id.* at ¶¶ 121–22).  In May 2005, the Swiss Confederation ordered the freezing of assets held by

12  the Hilsenraths in two banks (Credit Suisse and UBS) because it was suspected that the assets

13  were stolen from a California-based company.  Defendant Holtkamp, working on the behalf of

14  the Swiss Confederation, seized documents held by the two banks to trace allegedly illicit

15  financial dealings and business relationships in numerous countries (*id.* at ¶¶ 40–42, 56).

16          According to the complaint, in May 2005, this Court first sent Mr. Holtkamp its finding

17  that the Hilsenraths' funds in Switzerland were not, in fact, the ill-begotten gains of theft.

18  Mr. Holtkamp and his colleagues nonetheless continued to investigate the Hilsenraths' business

19  partners and maintain its freeze on their assets.  In July and August 2005, Oliver Hilsenrath

20  traveled from the United States to Switzerland and was interrogated by Swiss officials.  At the

21  conclusion of the interrogations, Mr. Holtkamp sent letters to the United States and

22  Mr. Hilsenrath stating that he did not have reason to believe that the Hilsenraths had illegally

23  transferred stolen funds to Switzerland.  In those letters, Mr. Holtkamp promised to lift the

24  freeze on the Hilsenraths' assets within three days; the funds, however, have remained frozen

25  until this day (*id.* at ¶¶ 43–48).

26          That same summer, two unidentified agents of the Swiss Confederation visited various

27  countries to investigate Hilsenrath business partners allegedly engaged in money-laundering.

28                                            2

United States District Court

For the Northern District of California

1    These agents told local authorities that they were investigating an international money

2    laundering ring, where eleven million illegally obtained American dollars were laundered

3    through Switzerland.  This investigation caused substantial financial damage and

4    embarrassment to plaintiffs.  In 2006, the United States government and district court sent

5    letters to the Swiss government, notifying them that the freeze was not warranted by any

6    prosecution pending in the United States.  The Swiss Defendants remained silent and the funds

7    were never released to their owners (*id.* at ¶¶ 49–55).

8         On February 6, 2007, however, Mr. Hilsenrath entered into a written plea agreement

9    with the government.  Mr. Hilsenrath promised in the plea agreement he would "repatriate all

10   remaining money and assets presently held by the Swiss authorities or frozen by the Swiss

11   authorities in other jurisdictions, which [he estimated] as approximately $2,000,000. [He would]

12   deposit the money in an escrow account with the Court pending further order of the Court

13   distributing the assets.  [He would] withdraw any claim to these assets and [would] file no

14   further actions in the future concerning the funds" (CR 03-00213, Doc. 366).  He then pled

15   guilty to securities fraud and tax evasion.

16        Plaintiffs commenced action on May 27, 2007, alleging the following causes of action

17   against the Swiss Defendants: (i) deprivation of their assets collectively and indiscriminately in

18   violation of the Fourth and Fifth Amendments; (ii) unreasonable search and seizure in violation

19   of the Fourth and Fifth Amendments; (iii) recovery of lost property in violation of the Fifth

20   Amendment; (iv) recovery of lost business opportunities abroad in violation of the Fifth

21   Amendment; (v) personal damages to Hana Hilsenrath, such as fear, anguish, illness, and the

22   loss of the majority of her personal wealth; (vi) recovery of damages as the result of a breach in

23   due process in violation of the Sixth Amendment; (vii) recovery of legal fees in relation to the

24   Swiss freezes; (viii) deprivation of plaintiffs' right to liberty in violation of the Fifth and

25   Fourteenth Amendments; and (ix) losses as the result of the forced liquidation of trust funds in

26   violation of the Fifth Amendment (*id.* at ¶¶ 89–134).  The Hilsenraths seek millions of dollars

27   due to loss from the frozen funds, loss of business, legal fees, and personal damages (*id.* at ¶¶

28

3

United States District Court

For the Northern District of California

1  138–47).  No lawyer represents any plaintiff.  Mr. Hilsenrath is reminded once again that he

2  cannot represent anyone but himself.  The other pro se plaintiffs must speak for themselves.

3      On July 9, 2007, the Court entered judgment against Mr. Hilsenrath in the criminal case.

4  He was convicted of committing securities fraud and income tax evasion (CR 03-00213,

5  Doc. 387).

6                          **ANALYSIS**

7      Defendants claim that plaintiffs lack subject-matter jurisdiction.  The Court agrees.  A

8  motion to dismiss may be asserted on grounds of lack of subject-matter jurisdiction.  FRCP

9  12(b)(1).  Plaintiffs erroneously argue that it is the district court's discretion to award sovereign

10  immunity (Opp. at 3).  The Supreme Court has held that the Foreign Sovereign Immunities Act

11  is "the sole basis for obtaining jurisdiction over a foreign state in our courts."  *Argentine*

12  *Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  The FSIA provides that

13  "a foreign state shall be immune from the jurisdiction of the courts of the United States and of

14  the States," except as provided in Sections 1605 (general exceptions to the jurisdictional

15  immunity of a foreign state) and 1607 (counterclaims).  28 U.S.C. 1604.  The FSIA "presumes

16  immunity.  Jurisdiction is limited to cases in which the foreign state is not entitled to immunity

17  either under one of the enumerated exceptions contained in 28 U.S.C 1605 and 1607, or under

18  any applicable international agreement.  If the claim does not fall within one of the exceptions,

19  the court cannot entertain the action and must dismiss the action against the foreign state for

20  lack of jurisdiction."  *Security Pacific Nat. Bank v. Derderian*, 872 F.2d 281, 285 (9th Cir.

21  1989).

22      A "foreign state" includes "a political subdivision of a foreign state or an agency or

23  instrumentality of a foreign state."  28 U.S.C. 1603(a).  An "agency or instrumentality of a

24  foreign state" means any entity that is "a separate legal person, corporate or otherwise," "an

25  organ of a foreign state or political subdivision thereof," and "is neither a citizen of a State of

26  the United States."  28 U.S.C. 1603(b).  Here, the Swiss Confederation, which is the federal

27  government of Switzerland, is a foreign state.  The Office of the Attorney General is an agency

28                              4

United States District Court

For the Northern District of California

1    or instrumentality of Switzerland.  Similarly, Defendants Holtkamp, who is a Federal Attorney

2    employed by the Office of the Attorney General, and Sautebin, who is a Federal Examining

3    Magistrate, are agencies or instrumentalities of a foreign state.  None of them is a United States

4    citizen (Holtkamp Decl. at ¶¶ 2, Sautebin Decl. at ¶¶ 2–3).  If plaintiffs' claims do not fall into

5    one of the exceptions, this Court cannot exercise jurisdiction over defendants.

6         Defendants claim that, because plaintiffs fail to allege any facts demonstrating that any

7    exception to the FSIA applies, plaintiffs' claims should be entirely dismissed.  The exceptions

8    to sovereign immunity are: (i) the foreign state has waived its immunity; (ii) the action is based

9    upon a commercial activity; (iii) rights in property were taken in violation of international law

10    and the property had some nexus to commercial activity in the United States; (iv) rights in

11    property in the United States acquired by succession or succession are in issue; (v) money

12    damages are sought against a foreign state for personal injury or death, or damage to or loss of

13    property occurring in the United States; (vi) the action is brought to enforce an arbitration

14    agreement between plaintiffs and defendants; and (vii) money damages are sought against a

15    foreign state for personal injury or death that was caused by torture, extrajudicial killing,

16    aircraft sabotage, or hostage taking.  28 U.S.C.1605(a)(1)–(7).  This order does not discuss the

17    other exceptions under 28 U.S.C. 1605 and 1607 because they deal with maritime liens,

18    mortgages, and counterclaims.

19         Exceptions (iv), (vi), and (vii) clearly do not apply.  The rights in property in the

20    United States acquired by succession or gift or rights in immovable property situated in the

21    United States are not in issue.  This action is not being brought to enforce an arbitration

22    agreement between plaintiffs and defendants.  Finally, plaintiffs are not seeking money damages

23    for personal injury or death caused by torture, extrajudicial killing, aircraft sabotage, or hostage

24    taking.

25         Under 28 U.S.C. 1605(a)(1), a federal court would have jurisdiction if "the foreign state

26    has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of

27    the waiver which the foreign state may purport to effect except in accordance with the terms of

28

the waiver." In their moving papers, the Swiss Defendants claim that they did not waive their sovereign immunity. Plaintiffs counter that defendants waived their immunity on August 27, 2007, when the Swiss Confederation "served Plaintiffs with an appealable order in the matter of its so-called criminal action against Plaintiffs via the US Department of Justice/Criminal Division" (Opp. at 8). Plaintiffs cite *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992), which held that a foreign state implicitly waived its sovereign immunity when evidence showed that it deliberately involved United States courts in its efforts to persecute the plaintiff.

The Ninth Circuit, however, draws a distinction between *Siderman* and cases like the one before this Court. Diplomatic processes carried out through the powers of the executive — *not* the judicial — branch do not constitute a waiver of sovereign immunity. *Blaxland v. Commonwealth Director of Public Prosecutions*, 323 F.3d 1198, 1206 (9th Cir. 2003). In *Blaxland*, "the Australian government did not itself apply to our courts for assistance but instead invoked its rights under the Extradition Treaty by applying to the executive branch of our government [to secure the plaintiff's extradition]." *Ibid*. Here, the Swiss Department of Justice and Police transmitted a request for service to the United States Department of Justice, the executive branch, pursuant to Article 22 of the Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters (Opp. Exh. H). This order finds that the request was part of a diplomatic process carried out through the powers of the executive branch and therefore did not constitute a waiver of sovereign immunity.

There is also the commercial-activity exception. The foreign state is not immune if "the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. 1605(a)(2). The Supreme Court has held that "a state is immune from the jurisdiction of foreign courts as to its sovereign or public acts . . . but not as to

6

United States District Court

For the Northern District of California

those that are private or commercial in character." *Saudi Arabia v. Nelson*, 507 U.S. 349,

359–60 (1993). A foreign state engages in commercial activity when it exercises "only those

powers that can also be exercised by private citizens, as distinct from those powers peculiar to

sovereigns. Put differently, a foreign state engages in commercial activity for purposes of the

restrictive theory [of foreign sovereign immunity] only where it acts in the manner of a private

player within the market." *Id.* at 360 (quotations omitted). The Swiss Defendants did not act as

private players in the market. Rather, they exercised powers peculiar to sovereigns —

they investigated Mr. Hilsenrath's criminal activities in Switzerland and other countries, issued

a warrant for his arrest, and froze his assets pending criminal investigation. Plaintiffs' claims

do not fall under the commercial-activity exception.

Another exception to foreign sovereign immunity is the "takings exception" —

when there were "rights in property taken in violation of international law are in issue and that

property or any property exchanged for such property is present in the United States in

connection with a commercial activity carried on in the United States by the foreign state;

or that property or any property exchanged for such property is owned or operated by an agency

or instrumentality of the foreign state and that agency or instrumentality is engaged in a

commercial activity in the United States." 28 U.S.C. 1605(a)(3). The Ninth Circuit has held

that, "[a]t the jurisdictional stage, we need not decide whether the taking actually violated

international law; as long as a claim is substantial and non-frivolous, it provides a sufficient

basis for the exercise of our jurisdiction." *Altmann v. Republic of Austria*. 317 F.3d 954, 968

(9th Cir. 2002). Here, plaintiffs' claims are not "substantial and non-frivolous." The Swiss

Defendants froze plaintiffs' asset during the course of a criminal investigation. Mr. Hilsenrath

later entered a written plea agreement with the government in which he pled guilty to securities

fraud and tax evasion. According to the terms of his plea agreement, Mr. Hilsenrath would

"repatriate all remaining money and assets presently held by the Swiss authorities or frozen by

the Swiss authorities in other jurisdictions, which [he estimated] as approximately $2,000,000.

[He would] deposit the money in an escrow account with the Court pending further order of the

7

United States District Court

For the Northern District of California

1    Court distributing the assets. [He would] withdraw any claim to these assets and [would] file no

2    further actions in the future concerning the funds." It is frivolous to claim that freezing assets

3    during a legitimate criminal investigation violated international law.

4    Furthermore, the frozen assets remained in Switzerland and other European countries;

5    they were not "present in the United States in connection with a commercial activity carried on

6    in the United States by the foreign state." Nor were they "owned or operated by an agency or

7    instrumentality of the foreign state and that agency or instrumentality is engaged in a

8    commercial activity in the United States." Credit Suisse and UBS held the assets when the

9    Swiss Defendants ordered the freeze. These two private banks are not agencies or

10    instrumentalities of Switzerland because they are not organs of a foreign state.

11    According to 28 U.S.C. 1605(a)(5), another possible exception is when "money

12    damages are sought against a foreign state for personal injury or death, or damage to or loss of

13    property, occurring in the United States and caused by the tortious act or omission of that

14    foreign state or of any official or employee of that foreign state while acting within the scope of

15    his office or employment; except this paragraph shall not apply to — (A) any claim based upon

16    the exercise or performance or the failure to exercise or perform a discretionary function

17    regardless of whether the discretion be abused." Under the plain language of the statute, this

18    exception does not apply if the plaintiff's claim were based upon the exercise of discretion by

19    the foreign state (or official or employee while acting within the scope of his office or

20    employment). In determining whether the acts of the foreign state or officials are within the

21    discretionary function exception, the Ninth Circuit considers two factors: (i) whether the

22    government employee had any discretion to act or if there were an element of choice as to

23    appropriate conduct; and (ii) whether the decisions were grounded in social, economic, and

24    political policy, concentrating on the nature of the conduct, rather than the status of the actor.

25    *Risk v. Halvorsen*, 936 F.2d 393, 395 (9th Cir. 1991). The Ninth Circuit further held in *Risk*

26    that, "[a]lthough these acts may constitute a crime under California law, it cannot be said that

27

28

8

United States District Court

For the Northern District of California

every conceivably illegal act is outside the scope of the discretionary function exception." *Id.* at 397.

Here, the Swiss Confederation, the Federal Attorney General of Switzerland, Mr. Sautebin, and Mr. Holtkamp froze plaintiffs' assets in the course of a criminal investigation. Mr. Sautebin and Mr. Holtkamp were acting within the scope of their offices; they were in charge of the criminal investigation against the Hilsenraths. They had discretion in deciding whether they would conduct the investigation and whether or not to effect the freeze. Furthermore, the decision to enforce Swiss criminal law was grounded in social, economic, and political policy. Because this order finds that defendants' actions were discretionary and grounded in public policy, the tortious activity exception to the FSIA does not apply.

Aside from these statutory exceptions, plaintiffs argue that the principle of *jus cogens* and the Second Hickenlooper Amendment, 22 U.S.C. 2370(e)(2), prohibit the Swiss Defendants from asserting sovereign immunity in violation of international law. This order finds that plaintiffs' arguments are misplaced. *First*, the Ninth Circuit has explicitly stated that "[t]he fact that there has been a violation of *jus cogens* does not confer jurisdiction under the FSIA." *Siderman*, 965 F.2d at 719. *Second*, the Second Hickenlooper Amendment also does not apply. The Hickenlooper Amendment states:

> Notwithstanding any other provision of law, no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law in a case in which a claim of title or other right to property is asserted by any party including a foreign state (or a party claiming through such state) based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of that state *in violation of the principles of international law*, including the principles of compensation and the other standards set out in this subsection: *Provided, That this subparagraph shall not be applicable (1) in any case in which an act of a foreign state is not contrary to international law* or with respect to a claim of title or other right to property acquired pursuant to an irrevocable letter of credit of not more than 180 days duration issued in good faith prior to the time of the confiscation or other taking, or (2) in any case with respect to which the President determines that application of the act of state doctrine is required in that particular case by the foreign policy interests of the United States and a

United States District Court

For the Northern District of California

1

suggestion to this effect is filed on his behalf in that case with the court.

2

The italicized portions indicate why the Hickenlooper Amendment does not apply to the facts of

3

this case. Plaintiffs' assets were not frozen in violation of the principles of international law;

4

the Swiss Defendants had ordered the freeze because Mr. Hilsenrath was under a criminal

5

investigation. Moreover, even though the Ninth Circuit has not directly addressed this issue,

6

other circuits have held that the Hickenlooper Amendment only applies to property located in

7

the United States. *See, e.g.*, *Empresa Cuvana Exportadora De Azucar y Sus Derivados v.*

8

*Lamborn & Co.*, 652 F.2d 231, 237 (2d Cir. 1981); *Compania de Gas de Nuevo Laredo, S.A. v.*

9

*Entex, Inc.*, 686 F.2d 322, 327 (5th Cir. 1982). Here, the property has remained in Switzerland

10

and the other European countries.

11

Given the Court's conclusion that defendants are immune from suit under the FSIA,

12

it does not need to reach defendants' other arguments regarding improper service,

13

insufficient contacts, the Acts of State Doctrine, and plaintiffs' failed constitutional law claims.

14

**CONCLUSION**

15

The FSIA provides the exclusive means for a United States federal court to exercise

16

jurisdiction over a foreign state and its instrumentalities. Unless a claim falls under one of the

17

numerous FSIA exceptions, a court will lack subject-matter jurisdiction over the claim.

18

Here, plaintiffs' claims did not fall under any of the statutory exceptions. The Court has no

19

subject-matter jurisdiction over their claims. Defendants' motion to dismiss is therefore

20

**GRANTED** with prejudice. The hearing set for November 1, 2007, is hereby **VACATED**.

21

22

**IT IS SO ORDERED.**

23

24

Dated: October 23, 2007.

25

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

26

27

28

10