# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANA HILSENRATH, OLIVER HILSENRATH, NAMA HILSENRATH, LIOR HILSENRATH, ELLA HOPE HILSENRATH, ISAIAH BENJAMIN HILSENRATH, SAUL NATHANIEL HILSENRATH, and THE LIVING TRUST OF MELANIE AND ANDRE HILSENRATH,<br><br>Plaintiffs,<br><br>v.<br><br>THE SWISS CONFEDERATION, THE FEDERAL ATTORNEY GENERAL OF SWITZERLAND, GERARD SAUTEBIN, BRENT HOLTKAMP, and DOES 1–10,<br><br>Defendants. | No. C 07-02782 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND VACATING HEARING** |

**INTRODUCTION**

Pro se plaintiffs sued defendants for freezing plaintiffs' assets during a criminal investigation. Defendants the Swiss Confederation, the Federal Attorney General of Switzerland, Gerald Sautebin, and Brent Holtkamp (the "Swiss Defendants") move to dismiss the complaint. Plaintiffs are Hana Hilsenrath, Oliver Hilsenrath, Nama Hilsenrath, Lior Hilsenrath, Ella Hope Hilsenrath, Isaiah Benjamin Hilsenrath, Saul Nathaniel Hilsenrath, and the Living Trust of Melanie and Andre Hilsenrath. The Swiss Defendants claim that (i) the Court lacks personal jurisdiction over them because of improper service by plaintiffs;

(ii) the Court lacks subject matter jurisdiction over plaintiffs' claims because the Swiss Defendants are entitled to sovereign immunity under the Foreign Sovereign Immunities Act; (iii) the Court lacks personal jurisdiction over defendants Sautebin and Holtkamp due to these defendants' lack of sufficient contacts with the United States and California; (iv) plaintiffs' claims are barred under the Act of State Doctrine; and (v) plaintiffs' constitutional claims fail because the acts complained of were taken by a foreign government in Switzerland. For the reasons stated below, defendants' motion to dismiss is **GRANTED**.

## STATEMENT

Plaintiffs are United States citizens who reside in California (Compl. at ¶ 16). In April 2005, the Swiss authorities issued an international arrest warrant for Oliver Hilsenrath (*id.* at ¶¶ 121–22). In May 2005, the Swiss Confederation ordered the freezing of assets held by the Hilsenraths in two banks (Credit Suisse and UBS) because it was suspected that the assets were stolen from a California-based company. Defendant Holtkamp, working on the behalf of the Swiss Confederation, seized documents held by the two banks to trace allegedly illicit financial dealings and business relationships in numerous countries (*id.* at ¶¶ 40–42, 56).

According to the complaint, in May 2005, this Court first sent Mr. Holtkamp its finding that the Hilsenraths' funds in Switzerland were not, in fact, the ill-begotten gains of theft. Mr. Holtkamp and his colleagues nonetheless continued to investigate the Hilsenraths' business partners and maintain its freeze on their assets. In July and August 2005, Oliver Hilsenrath traveled from the United States to Switzerland and was interrogated by Swiss officials. At the conclusion of the interrogations, Mr. Holtkamp sent letters to the United States and Mr. Hilsenrath stating that he did not have reason to believe that the Hilsenraths had illegally transferred stolen funds to Switzerland. In those letters, Mr. Holtkamp promised to lift the freeze on the Hilsenraths' assets within three days; the funds, however, have remained frozen until this day (*id.* at ¶¶ 43–48).

That same summer, two unidentified agents of the Swiss Confederation visited various countries to investigate Hilsenrath business partners allegedly engaged in money-laundering.

These agents told local authorities that they were investigating an international money laundering ring, where eleven million illegally obtained American dollars were laundered through Switzerland. This investigation caused substantial financial damage and embarrassment to plaintiffs. In 2006, the United States government and district court sent letters to the Swiss government, notifying them that the freeze was not warranted by any prosecution pending in the United States. The Swiss Defendants remained silent and the funds were never released to their owners (*id.* at ¶¶ 49–55).

On February 6, 2007, however, Mr. Hilsenrath entered into a written plea agreement with the government. Mr. Hilsenrath promised in the plea agreement he would "repatriate all remaining money and assets presently held by the Swiss authorities or frozen by the Swiss authorities in other jurisdictions, which [he estimated] as approximately $2,000,000. [He would] deposit the money in an escrow account with the Court pending further order of the Court distributing the assets. [He would] withdraw any claim to these assets and [would] file no further actions in the future concerning the funds" (CR 03-00213, Doc. 366). He then pled guilty to securities fraud and tax evasion.

Plaintiffs commenced action on May 27, 2007, alleging the following causes of action against the Swiss Defendants: (i) deprivation of their assets collectively and indiscriminately in violation of the Fourth and Fifth Amendments; (ii) unreasonable search and seizure in violation of the Fourth and Fifth Amendments; (iii) recovery of lost property in violation of the Fifth Amendment; (iv) recovery of lost business opportunities abroad in violation of the Fifth Amendment; (v) personal damages to Hana Hilsenrath, such as fear, anguish, illness, and the loss of the majority of her personal wealth; (vi) recovery of damages as the result of a breach in due process in violation of the Sixth Amendment; (vii) recovery of legal fees in relation to the Swiss freezes; (viii) deprivation of plaintiffs' right to liberty in violation of the Fifth and Fourteenth Amendments; and (ix) losses as the result of the forced liquidation of trust funds in violation of the Fifth Amendment (*id.* at ¶¶ 89–134). The Hilsenraths seek millions of dollars due to loss from the frozen funds, loss of business, legal fees, and personal damages (*id.* at ¶¶

138–47). No lawyer represents any plaintiff. Mr. Hilsenrath is reminded once again that he cannot represent anyone but himself. The other pro se plaintiffs must speak for themselves.

On July 9, 2007, the Court entered judgment against Mr. Hilsenrath in the criminal case. He was convicted of committing securities fraud and income tax evasion (CR 03-00213, Doc. 387).

**ANALYSIS**

Defendants claim that plaintiffs lack subject-matter jurisdiction. The Court agrees. A motion to dismiss may be asserted on grounds of lack of subject-matter jurisdiction. FRCP 12(b)(1). Plaintiffs erroneously argue that it is the district court's discretion to award sovereign immunity (Opp. at 3). The Supreme Court has held that the Foreign Sovereign Immunities Act is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). The FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States," except as provided in Sections 1605 (general exceptions to the jurisdictional immunity of a foreign state) and 1607 (counterclaims). 28 U.S.C. 1604. The FSIA "presumes immunity. Jurisdiction is limited to cases in which the foreign state is not entitled to immunity either under one of the enumerated exceptions contained in 28 U.S.C 1605 and 1607, or under any applicable international agreement. If the claim does not fall within one of the exceptions, the court cannot entertain the action and must dismiss the action against the foreign state for lack of jurisdiction." *Security Pacific Nat. Bank v. Derderian*, 872 F.2d 281, 285 (9th Cir. 1989).

A "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. 1603(a). An "agency or instrumentality of a foreign state" means any entity that is "a separate legal person, corporate or otherwise," "an organ of a foreign state or political subdivision thereof," and "is neither a citizen of a State of the United States." 28 U.S.C. 1603(b). Here, the Swiss Confederation, which is the federal government of Switzerland, is a foreign state. The Office of the Attorney General is an agency

4

or instrumentality of Switzerland. Similarly, Defendants Holtkamp, who is a Federal Attorney employed by the Office of the Attorney General, and Sautebin, who is a Federal Examining Magistrate, are agencies or instrumentalities of a foreign state. None of them is a United States citizen (Holtkamp Decl. at ¶¶ 2, Sautebin Decl. at ¶¶ 2–3). If plaintiffs' claims do not fall into one of the exceptions, this Court cannot exercise jurisdiction over defendants.

Defendants claim that, because plaintiffs fail to allege any facts demonstrating that any exception to the FSIA applies, plaintiffs' claims should be entirely dismissed. The exceptions to sovereign immunity are: (i) the foreign state has waived its immunity; (ii) the action is based upon a commercial activity; (iii) rights in property were taken in violation of international law and the property had some nexus to commercial activity in the United States; (iv) rights in property in the United States acquired by succession or succession are in issue; (v) money damages are sought against a foreign state for personal injury or death, or damage to or loss of property occurring in the United States; (vi) the action is brought to enforce an arbitration agreement between plaintiffs and defendants; and (vii) money damages are sought against a foreign state for personal injury or death that was caused by torture, extrajudicial killing, aircraft sabotage, or hostage taking. 28 U.S.C.1605(a)(1)–(7). This order does not discuss the other exceptions under 28 U.S.C. 1605 and 1607 because they deal with maritime liens, mortgages, and counterclaims.

Exceptions (iv), (vi), and (vii) clearly do not apply. The rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are not in issue. This action is not being brought to enforce an arbitration agreement between plaintiffs and defendants. Finally, plaintiffs are not seeking money damages for personal injury or death caused by torture, extrajudicial killing, aircraft sabotage, or hostage taking.

Under 28 U.S.C. 1605(a)(1), a federal court would have jurisdiction if "the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of

5

the waiver." In their moving papers, the Swiss Defendants claim that they did not waive their sovereign immunity. Plaintiffs counter that defendants waived their immunity on August 27, 2007, when the Swiss Confederation "served Plaintiffs with an appealable order in the matter of its so-called criminal action against Plaintiffs via the US Department of Justice/Criminal Division" (Opp. at 8). Plaintiffs cite *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992), which held that a foreign state implicitly waived its sovereign immunity when evidence showed that it deliberately involved United States courts in its efforts to persecute the plaintiff.

The Ninth Circuit, however, draws a distinction between *Siderman* and cases like the one before this Court. Diplomatic processes carried out through the powers of the executive — *not* the judicial — branch do not constitute a waiver of sovereign immunity. *Blaxland v. Commonwealth Director of Public Prosecutions*, 323 F.3d 1198, 1206 (9th Cir. 2003). In *Blaxland*, "the Australian government did not itself apply to our courts for assistance but instead invoked its rights under the Extradition Treaty by applying to the executive branch of our government [to secure the plaintiff's extradition]." *Ibid*. Here, the Swiss Department of Justice and Police transmitted a request for service to the United States Department of Justice, the executive branch, pursuant to Article 22 of the Treaty Between the United States of America and the Swiss Confederation on Mutual Assistance in Criminal Matters (Opp. Exh. H). This order finds that the request was part of a diplomatic process carried out through the powers of the executive branch and therefore did not constitute a waiver of sovereign immunity.

There is also the commercial-activity exception. The foreign state is not immune if "the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. 1605(a)(2). The Supreme Court has held that "a state is immune from the jurisdiction of foreign courts as to its sovereign or public acts . . . but not as to

those that are private or commercial in character." *Saudi Arabia v. Nelson*, 507 U.S. 349, 359–60 (1993). A foreign state engages in commercial activity when it exercises "only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns. Put differently, a foreign state engages in commercial activity for purposes of the restrictive theory [of foreign sovereign immunity] only where it acts in the manner of a private player within the market." *Id.* at 360 (quotations omitted). The Swiss Defendants did not act as private players in the market. Rather, they exercised powers peculiar to sovereigns — they investigated Mr. Hilsenrath's criminal activities in Switzerland and other countries, issued a warrant for his arrest, and froze his assets pending criminal investigation. Plaintiffs' claims do not fall under the commercial-activity exception.

Another exception to foreign sovereign immunity is the "takings exception" — when there were "rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." 28 U.S.C. 1605(a)(3). The Ninth Circuit has held that, "[a]t the jurisdictional stage, we need not decide whether the taking actually violated international law; as long as a claim is substantial and non-frivolous, it provides a sufficient basis for the exercise of our jurisdiction." *Altmann v. Republic of Austria.* 317 F.3d 954, 968 (9th Cir. 2002). Here, plaintiffs' claims are not "substantial and non-frivolous." The Swiss Defendants froze plaintiffs' asset during the course of a criminal investigation. Mr. Hilsenrath later entered a written plea agreement with the government in which he pled guilty to securities fraud and tax evasion. According to the terms of his plea agreement, Mr. Hilsenrath would "repatriate all remaining money and assets presently held by the Swiss authorities or frozen by the Swiss authorities in other jurisdictions, which [he estimated] as approximately $2,000,000. [He would] deposit the money in an escrow account with the Court pending further order of the

7

1 Court distributing the assets. [He would] withdraw any claim to these assets and [would] file no
2 further actions in the future concerning the funds." It is frivolous to claim that freezing assets
3 during a legitimate criminal investigation violated international law.

4 Furthermore, the frozen assets remained in Switzerland and other European countries;
5 they were not "present in the United States in connection with a commercial activity carried on
6 in the United States by the foreign state." Nor were they "owned or operated by an agency or
7 instrumentality of the foreign state and that agency or instrumentality is engaged in a
8 commercial activity in the United States." Credit Suisse and UBS held the assets when the
9 Swiss Defendants ordered the freeze. These two private banks are not agencies or
10 instrumentalities of Switzerland because they are not organs of a foreign state.

11 According to 28 U.S.C. 1605(a)(5), another possible exception is when "money
12 damages are sought against a foreign state for personal injury or death, or damage to or loss of
13 property, occurring in the United States and caused by the tortious act or omission of that
14 foreign state or of any official or employee of that foreign state while acting within the scope of
15 his office or employment; except this paragraph shall not apply to — (A) any claim based upon
16 the exercise or performance or the failure to exercise or perform a discretionary function
17 regardless of whether the discretion be abused." Under the plain language of the statute, this
18 exception does not apply if the plaintiff's claim were based upon the exercise of discretion by
19 the foreign state (or official or employee while acting within the scope of his office or
20 employment). In determining whether the acts of the foreign state or officials are within the
21 discretionary function exception, the Ninth Circuit considers two factors: (i) whether the
22 government employee had any discretion to act or if there were an element of choice as to
23 appropriate conduct; and (ii) whether the decisions were grounded in social, economic, and
24 political policy, concentrating on the nature of the conduct, rather than the status of the actor.
25 *Risk v. Halvorsen*, 936 F.2d 393, 395 (9th Cir. 1991). The Ninth Circuit further held in *Risk*
26 that, "[a]lthough these acts may constitute a crime under California law, it cannot be said that

8

every conceivably illegal act is outside the scope of the discretionary function exception." *Id.* at 397.

Here, the Swiss Confederation, the Federal Attorney General of Switzerland, Mr. Sautebin, and Mr. Holtkamp froze plaintiffs' assets in the course of a criminal investigation. Mr. Sautebin and Mr. Holtkamp were acting within the scope of their offices; they were in charge of the criminal investigation against the Hilsenraths. They had discretion in deciding whether they would conduct the investigation and whether or not to effect the freeze. Furthermore, the decision to enforce Swiss criminal law was grounded in social, economic, and political policy. Because this order finds that defendants' actions were discretionary and grounded in public policy, the tortious activity exception to the FSIA does not apply.

Aside from these statutory exceptions, plaintiffs argue that the principle of *jus cogens* and the Second Hickenlooper Amendment, 22 U.S.C. 2370(e)(2), prohibit the Swiss Defendants from asserting sovereign immunity in violation of international law. This order finds that plaintiffs' arguments are misplaced. *First*, the Ninth Circuit has explicitly stated that "[t]he fact that there has been a violation of *jus cogens* does not confer jurisdiction under the FSIA." *Siderman*, 965 F.2d at 719. *Second*, the Second Hickenlooper Amendment also does not apply. The Hickenlooper Amendment states:

> Notwithstanding any other provision of law, no court in the United States shall decline on the ground of the federal act of state doctrine to make a determination on the merits giving effect to the principles of international law in a case in which a claim of title or other right to property is asserted by any party including a foreign state (or a party claiming through such state) based upon (or traced through) a confiscation or other taking after January 1, 1959, by an act of that state *in violation of the principles of international law*, including the principles of compensation and the other standards set out in this subsection: *Provided, That this subparagraph shall not be applicable (1) in any case in which an act of a foreign state is not contrary to international law* or with respect to a claim of title or other right to property acquired pursuant to an irrevocable letter of credit of not more than 180 days duration issued in good faith prior to the time of the confiscation or other taking, or (2) in any case with respect to which the President determines that application of the act of state doctrine is required in that particular case by the foreign policy interests of the United States and a

9

> suggestion to this effect is filed on his behalf in that case with the court.

The italicized portions indicate why the Hickenlooper Amendment does not apply to the facts of this case. Plaintiffs' assets were not frozen in violation of the principles of international law; the Swiss Defendants had ordered the freeze because Mr. Hilsenrath was under a criminal investigation. Moreover, even though the Ninth Circuit has not directly addressed this issue, other circuits have held that the Hickenlooper Amendment only applies to property located in the United States. *See, e.g.*, *Empresa Cuvana Exportadora De Azucar y Sus Derivados v. Lamborn & Co.*, 652 F.2d 231, 237 (2d Cir. 1981); *Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.*, 686 F.2d 322, 327 (5th Cir. 1982). Here, the property has remained in Switzerland and the other European countries.

Given the Court's conclusion that defendants are immune from suit under the FSIA, it does not need to reach defendants' other arguments regarding improper service, insufficient contacts, the Acts of State Doctrine, and plaintiffs' failed constitutional law claims.

## CONCLUSION

The FSIA provides the exclusive means for a United States federal court to exercise jurisdiction over a foreign state and its instrumentalities. Unless a claim falls under one of the numerous FSIA exceptions, a court will lack subject-matter jurisdiction over the claim. Here, plaintiffs' claims did not fall under any of the statutory exceptions. The Court has no subject-matter jurisdiction over their claims. Defendants' motion to dismiss is therefore **GRANTED** with prejudice. The hearing set for November 1, 2007, is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: October 23, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE