HANA HILSENRATH
OLIVER HILSENRATH
822 Eastbrook Court
Danville, CA 94506
Telephone: 925 212 6299
Facsimile: 925 736 7571
ohlx@sbcglobal.net

PLAINTIFFS *IN PRO PER*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| HANA HILSENRATH, OLIVER HILSENRATH | **Case No: 3:07-cv-05374-WHA** |
|---|---|
| Plaintiffs, | **OPPOSITION TO DEFENDANT UBS'S MOTION TO DISMISS** |
| v. | Date: January 24, 2008 |
| CREDIT SUISSE (CS), UNITED BANK OF SWITZERLAND (UBS) AND DOES 1-10 | Time: 8:00 a.m.<br>Judge: Hon. William H. Alsup |
| Defendants. | **Jury Trial Demand** |

HILSENRATH V. CS, UBS

**INTRODUCTION**

Attorneys for UBS seem to attempt to dismiss this present complaint on the grounds that the bank is governed by Swiss law.

By their assessment that the bank is governed by Swiss law, UBS are confirming the need for the declaratory relief requested by Plaintiffs: All present and prospective clients of UBS in the United States (and as a matter of fact also outside the United States) should be alerted and warned that UBS is governed by Swiss law and what are the implications thereof.

As described in the current complaint, a person's funds at UBS can be taken away by Swiss officials, without authorization, without a court order, without a proceeding, without due process, without a court hearing or even charges of any kind.

None of the above potential perils are brought to the attention of a prospective UBS client that is watching the serene UBS commercials on CNN and other nationwide and worldwide media networks proclaiming " There is only YOU and US at UBS…"

Plaintiffs wish to ascertain that future commercials will say "There is YOU and US at UBS; but UBS is subject to Swiss government practices that could violate property rights as known to YOU pursuant to the US constitution and also the international law."

The Hilsenraths believe that current and prospective clients of UBS should be alerted of banking practices at UBS that could expose them and their savings to significant risk.

## **What is this case about?**

Hana and Oliver Hilsenrath were solicited in October 2000 in Danville California to open an account with UBS (see declaration Iannazzone: location of signature of documents). UBS proceeded to do a customary California client acceptance diligence on the Hilsenraths including employment, income, and position with the company and business of the employer. UBS collected also significant documentation on Hilsenrath and his company in California.

In 2003 the US government wrongfully accused Oliver Hilsenrath of depositing funds stolen in the USA in his account at UBS.

In 2006, the US government admitted its error and the District Court issued two orders exonerating the money *inter alia* at UBS (see orders 302 ands 309).

In these orders the Court stated as follows:

1. The funds in question are legitimately earned in the USA
2. There was no probable cause to restrain them to start with
3. Any bank in the US would release the funds in receipt of this order.
4. This order represents the final adjudication of this matter

In response, UBS are stating that they are a Swiss bank; they are only subject to Swiss law and a Swiss government employee, Holtkamp, told them not to release the money.

Iannazzone, his colleagues and the Swiss authorities were repeatedly alerted of the US court's conclusion and orders. [see Hilsenrath Declaration - Exhibit A]

Oliver Hilsenrath has kept UBS informed of the US court proceedings that exonerated the funds in question. Those funds were legitimately obtained in the US and deposited in the family's account with UBS. In 2005, 2006 and 2007, Oliver Hilsenrath emailed UBS copies of the District Court orders and then the final plea agreement all confirming the legitimate nature of the funds.

The Hilsenraths also sent UBS the order of the Swiss Central Authority requesting the removal of the freeze and have asked UBS's legal department's assistance to resolve the matter of the release of funds

UBS took no action awaiting a "more favorable" Swiss order meant to keep the funds in Switzerland.

Amid their serene advertisements in the United States: "YOU and US equals UBS", UBS took absolutely no action to protect the proven-legitimate assets in their trust. UBS felt no obligation or duty of care.

American clients should be warned to stay with such as Bank of America or Wells Fargo or other banks that abide to US and international rights of property.

American clients should be warned <u>not to buy into a false globalization.</u> They could find out, the hard way, that they were mislead and their assets and livelihood is in the hands of foreign erratic bankers, foreign erratic government officials, and an erratic legal systems that operates in the twilight zone of the human rights while masquerading safety, security and confidence.

## BANK UBS BLAMES HILSENRATH OF MISAPPROPRIATION

Edwards of UBS is "convicting" in his present motion Oliver Hilsenrath of a crime of which no court has ever convicted him: "misappropriation of funds when he was the CEO of U.S. Wireless Corporation ("US Wireless")".

To double-check the precise meaning of this statement by Edwards and UBS, plaintiffs have looked up "misappropriation" in the dictionary:

**Merriam Webster defines** "misappropriation" as follows":
> misappropriate: *to appropriate wrongly (as by theft or embezzlement)*

**The Cambridge Dictionary explains**:
> misappropriate: *to steal something that you have been trusted to take care of and use it for your own benefit:*

The Hilsenraths want to warn future American clients from banking with UBS. If they entrust their assets with UBS, they too could be convicted by UBS of criminal conduct made up by UBS themselves.

No court has convicted Oliver Hilsenrath of stealing money or stock from his company.

Hilsenrath's banker, UBS, did.

Edwards and UBS are incriminating Hilsenrath for convenience.
It is a disingenuous cover for the events in this case: No warning by the bank, no duty of care, and ultimately a major financial loss.

**EDWARDS AND UBS ARE UNCLEAR ABOUT THE LEGAL INTERRELATION OF "A TORT" WITH "A CONTRACT"**

Attorneys for UBS seem to attempt to dismiss this present complaint on the grounds that the bank is governed by Swiss law.

Attorneys from UBS wish to introduce the concept that the Hilsenraths are bound by a contract that prevents them to litigate in California District Court.

This present case is a straight liability complaint for a hazardous product, in other words a complaint for tort resulting from the acquisition of a hazardous product. A mere contract cannot be used to dismiss a tort claim.

**Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, \***

to be construed as a tort action, the [tortious] wrong ascribed to the defendant must be the gist of the **[\*\*51]** action with the contract being collateral. . . . The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.

Redevelopment Auth. of Cambria County v. International Ins. Co., 454 Pa. Super. 374, 685 A.2d 581, 590 (Pa. Super. Ct. 1996) (en banc) (quoting Phico Ins. Co. v. Presbyterian Med. Servs. Corp., 444 Pa. Super. 221, 663 A.2d 753, 757 (Pa. Super. Ct. 1995)). In other words, a claim should be limited to a contract claim when "the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." Bash v. Bell Telephone Co., 411 Pa. Super. 347, 601 A.2d 825, 830 (Pa. Super. Ct. 1992).

And also:  **M.H. Rydek Elecs, LLC v. Zober Indus., 2007 U.S. Dist. LEXIS 84411**

The purpose of the doctrine is to uphold the important difference between contract law and tort law. *Id.* "[T]ort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Id.* (citing *Bash v. Bell Tel. Co,* 411 Pa. Super. 347, 601 A.2d 825 (Pa. Super. 1992). **[\*5]** Thus, the gist of the action analysis requires the court to decide whether the claim is essentially a contract claim or a tort claim based on the "source of the duties allegedly breached; if the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature, whereas if the allegedly breached were of a type imposed on members of society as a matter of social policy, the claim is essentially tort-based." *Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 833 (E.D. Pa. 2000).

This current complaint deals with strict liability of products sold/solicited in the USA.

The failure to warn the Hilsenraths and other clients or prospective clients of UBS occurred and occurs here in the Unites States.

The complaint is also submitted as a matter of public interest to prevent potential future harm to Americans.

**THE WARNING LABEL SHOULD PROCEED THE CONTRACT**

In their complaint, the Hilsenraths assert that a warning label would have prevented them to enter an improper agreement with UBS who is controlled by unlawful Swiss government practices[1].

In his pleading Edwards, hired by UBS to plead their case, states that the same improper agreement (entered without the warning) prevents the Hilsenraths to litigate the matter of the missing warning label.

A simple causality analysis would show that the warning label should have preceded the execution of the agreement; therefore nothing in the agreement, signed in absence of the warning label, can be used as an argument against the need for the warning label itself.

The central issue in this litigation is whether a warning label was and is appropriate when a prospective client opens an account with UBS in order to avoid torts similar to the ones experienced by the Hilsenraths.

**JURISDICTION**

1. SOLICITATION IN CALIFORNIA

There can be no question about the California forum for this litigation.

As shown in UBS's own declaration [see Iannazzone's Declaration], the Hilsenraths have not traveled to Switzerland to open an account with UBS, but were solicited and signed the necessary papers here in California in October 2000.

How else did Iannazzone's forms get from UBS/Basel to the Hilsenraths at their home in Danville/California?

---

[1] Unlawful in the context of International law, US constitutional law and the Treaty between the United States and Switzerland.

Simply by mail solicitation of the bank to prospective clients in California and customary California new-client diligence[2].

## 2. MINIMUM CONTACT

UBS has minimum contact by means of banking facilities throughout California and in the cities of San Francisco, Walnut Creek etc.

The Hilsenraths assert that the failure to warn of the dangers of opening an account with UBS occurred here in California where they were solicited.

## 3. UBS DELIBERATELY AVAIL THEM SELVES TO CALIFORNIA COURT

In the microscopic fine print of a standard form, UBS is attempting to twist globalization one sidedly in their benefit [see Declaration Iannazzone].

Above the Hilsenraths' signatures in Iannazzone's declaration (barely legible) UBS seem to state the following (paraphrased): "We, UBS sell you, the client, globalization. However while we, UBS, shall litigate against you in any jurisdiction of our choice - California, or elsewhere, you shall litigate against us only in Basel".

**FAILURE TO STATE A CLAIM**

The assertion by Edwards of a failure to state a claim is baseless.

Even if the failure to state a claim had merits, such failure would not be a basis to dismiss the complaint. The Court itself can instruct plaintiffs to amend the complaint if it sees fit, or even identify on its own the statues and applicable case law.

> **D'Alessandro v. Bugler Tobacco Co., 2006 U.S. Dist. LEXIS 89761**
> The Court will deny a Rule 12(b)(6) motion to dismiss for **failure to state a claim** upon which relief may be granted "unless it appears beyond doubt that the plaintiff

---

[2] **Harmelin v. Man Fin. Inc., 2007 U.S. Dist. LEXIS 67661**

Further evidence indicates that UBS had its affiliates conduct due diligence on PAAMCo and Eustace in Pennsylvania. UBS eventually established an account for the Offshore Fund and Paul Eustace signed the account opening agreement in Philadelphia. In seeking PAAMCo's business and in conducting due diligence on PAAMCo and Eustace, UBS reached out and directed its activities at a resident of the state of Pennsylvania.

can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).

The question before the Court is not whether the plaintiff will ultimately prevail; rather, it is whether that plaintiff can prove any set of facts in support of its claims that would entitle it **[*6]** to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984).

The District Court has already established in its order Doc 302 and 309 [Hilsenrath Declaration, Exhibit B] that had the funds been in the US, they would have been released pursuant to its order.

Therefore UBS's assertion of lack of merits is incorrect.

Plaintiffs' claims are well stated and well established in law:

Plaintiffs allege:

(1) Strict liability and negligent failure to warn[3] that resulted in

(2) Loss of property and other damage[4].

(3) Creation of an unsafe public financial environment[5]

---

[3] **D'Alessandro v. Bugler Tobacco Co., 2006 U.S. Dist. LEXIS 89761**

When the alleged defect is the failure to provide warnings, a plaintiff is required to prove that the absence of a warning was a proximate cause of his harm. *See Campos v. Firestone Tire & Rubber Co.,* 98 N.J. 198, 485 A.2d 305 (1984).

The New Jersey Supreme Court has adopted a presumption that a plaintiff would have "heeded" an adequate warning if it had been given.

[W]ith respect to the issue of product-defect causation in a product-liability case based on a failure **[*10]** to warn, the plaintiff should be afforded the use of the presumption that he or she would have followed an adequate warning had one been provided, and that the defendant in order to rebut that presumption must produce evidence that such a warning would not have been heeded. *Id.* at 602-3.

[4] **Lippes v. Atlantic Bank of New York, 69 A.D.2d 127**

[T]he expression 'injury to property' * * * is to be given a broad and unrestricted meaning, so as to include every invasion of one's property rights by actionable wrong, and the decisions in this State have quite uniformly construed the expression in this manner [cases cited]". ( *Ghiglione v Friedman,* 115 App Div 606, 607; *Buckley v Mayor etc. of City of New York,* 30 App Div 463, 466, affd 159 NY 558; *Jay Bee Apparel Stores v 563-565 Main St. Realty Corp.,* 130 Misc 23, 27, affd 226 App Div 721; see, also, *McIntyre v Kavanaugh,* 242 U.S. 138, 141.) An action based upon an alleged injury to property is one sounding in tort. ( *Platt Corp. v Platt,* 42 Misc 2d 640, 643, affd 23 AD2d 823, revd on other grounds, 17 NY2d 234; *Polo v Kibrick,* 120 NYS2d 49, 51; *Side v Thompson,* 205 NYS2d 240.)

**UBS ASSOCIATES WITH VIOLATIONS OF PLAINTIFFS' NATURAL RIGHTS**

Each of the 4th, 5th and 6th amendments of the US Constitution is fully upheld by international law, as stated by the Geneva commission of Human rights.

By the Hilsenraths statement that their 4th, 5th and 6th amendments rights are violated by UBS and their Swiss bosses, the implication is that their fundamental rights under international law are being breached.

The question of which laws are breached, the US Constitution or the international law, is of no importance in this case. UBS is violating, and is an accessory in violating, basic human rights under any civilized law. Prospective clients should be warned.

***Universal Declaration of Human Rights*[6]** [see Hilsenrath Declaration Exhibit C]

***Article 8***
***[Right to due process equivalent to 4th, 5th and 6th amendment of the US Constitution]***
*"Everyone has the right to an effective remedy by the competent national tribunals for acts violating the fundamental rights granted him by the constitution or by law."*

The Hilsenraths were destituted by UBS without any access to a court other that the one who exonerated their assets.

---

[5] Pursuant to California Civil Code section 3493, "[a] private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." Cal. Civ. Code § 3493. California courts generally have limited the group of plaintiffs with standing to sue on a public nuisance theory to plaintiffs who can "show special injury to himself of a character different in *kind* -- not merely in degree -- from that suffered by the general public." *Institoris v. City of Los Angeles,* 210 Cal. App. 3d 10, 258 Cal.Rptr. 418, 424 (1989) (emphasis in original); *see also Baker v. Burbank-Glendale-Pasadena Airport Authority,* 220 Cal. App. 3d 1602, 270 Cal.Rptr. 337 (1990); Restatement (Second) of Torts § 821C(1) (1977) ("In order **[**57]** to recover damages in an individual action for a public nuisance, one must have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference.").

[6] The Office of the High Commissioner for Human Rights; OHCHR-UNOG
8-14 Avenue de la Paix; 1211 Geneva 10, Switzerland
+41 22 917-9000; udhr@ohchr.org

*Article 10*

*[Right to public trial equivalent to the 5th amendment of the US constitution]*

*"Everyone is entitled in full equality to a fair and public hearing by an independent and impartial tribunal, in the determination of his rights and obligations and of any criminal charge against him."*

The Hilsenraths did not enjoy ANY public trial or due process other that the one that exonerated their assets.

*Article 17*

*[Right to property equivalent to 4th and 5th amendment of the US constitution]*

*"1. Everyone has the right to own property alone as well as in association with others.*
*2. No one shall be arbitrarily deprived of his property."*

The Hilsenraths were arbitrarily deprived of their assets at and by UBS without any access to a court, a hearing, charges or a conviction.

> **Cochran Consulting v. Uwatec USA, 102 F.3d 1224**
>
> Under long-established principles of international comity, a foreign judgment is recognized when there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment

### UBS SEEMS TO BE SEEKING STATE IMMUNITY

Edwards, attorney for UBS, also tries to rely on this Court's denial of jurisdiction over the Swiss government in a related matter.

Edwards errs.

The jurisdiction over the Swiss was denied on the basis of sovereign immunity not the lack of merits of the tort.

UBS are not a sovereign (unless they wish to state that they are a Swiss government instrumentality which they did not). Therefore none of the sovereign protection of the Swiss government confers protections to UBS from jurisdiction of this court.

## THE WARNING LABEL[7]

UBS should be compelled to add an adequate warning label to alert their clients of conflicts of law in their bank, such as those occurred to the Hilsenraths. This warning should apear side by side with UBS's masqueraded serenity in its commercials: "You and US equals UBS…"

The Swiss official who confiscated the Hilsenraths' assets at UBS stated in this court that they are "not obligated by CONSTITUTIONAL RIGHTS SUCH AS THE 4TH, 5TH 6TH AND 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION.

Those fundamental rights are also entirely upheld by international law (as presented before; see also Hilsenrath Declaration Exhibit C).

The implications of that statement are shocking and should be a warning sign.

Can there be any doubt of the right of UBS's American clients, who might intent to keep their life-savings at UBS, to be warned that the bank is controlled by an erratic sovereign with such views?

The Hilsenraths would have certainly ruled out UBS as a viable banking alterative at the first hint of such extreme risk.

So would others, therefore they too need to be warned.

The warning has to be explicit.

---

[7] **Gonzales v. Carmenita Ford Truck Sales, 192 Cal. App. 3d 1143**

CALIFORNIA OFFICIAL REPORTS HEADNOTES
Classified to California Digest of Official Reports, 3d Series

*CA(1a)* **(1a)** *CA(1a)* **(1b) Products Liability § 35--Strict Liability in Tort--Duty to Warn.** --Where a manufacturer or supplier of a product is or should have been aware that a product is unreasonably dangerous absent a warning and such warning is feasible, strict liability in tort will attach if an appropriate and conspicuous warning is not given. A retailer's liability for personal injuries caused by a defective product is coextensive with that of the product's manufacturer.

*CA(4)* **(4) Products Liability § 35--Strict Liability in Tort--Duty to Warn.** --The duty of a manufacturer or supplier of a product to give a warning is not limited to unreasonably or unavoidably dangerous products. Rather, directions or warnings are in order where reasonably required to prevent the use of a product from becoming unreasonably dangerous, and it is the lack of such a warning which renders a product unreasonably dangerous and therefore defective.

It is not sufficient to merely state that Swiss law governess UBS (this particular aspect is also not clearly stated to prospective clients).

The events in the Hilsenraths' case reveal the extreme risks of the Swiss law that governs UBS. According to that Swiss law that governs UBS, a client can have funds and assets confiscated without the protections of due process or the benefits of a hearing of a court, and with no other recourse.

The sought warning label shall be in full analogy with the tobacco industry's warning labels that do not merely cite the fact that cigarettes are made of tobacco. The labels explicitly explain to prospective clients that the product increases their chance to die of cancer, emphysema etc.

So does the ownership of an account with UBS.

The American clients should be clearly warned about the looming threats emerging from a false sense of globalization. The American clients should be clearly warned of the risks they run when choosing to bank with UBS rather than staying with their good-old local Bank of America, Wells Fargo etc.

## EDWARDS' UNPUBLISHED CITATIONS

Finally, Edwards on behalf of UBS, needs to resort to unpublished case law to make his argument.

Apparently the hundreds of cases brought by clients against UBS were not sufficient for Edwards and he needed to resort to improper citations.

> **Sorchini v. City of Covina, 250 F.3d 706:**
> 9th Cir. R. 36-3 prohibits the citation of unpublished dispositions in almost all circumstances.

## CONCLUSION

Plaintiffs allege that UBS distributes, promotes and sells their product in the United States with reckless disregard for the security and prosperity of their clients.

UBS are hiding the fact that they are subject to conflicting and incompatible legal systems. When challenged with conflict, UBS yields to awkward and erratic Swiss officials' orders.

Accordingly, plaintiffs ask the court to compel UBS to add an adequate warning label to all UBS's financial solicitations in the USA.

> GONZALES V. CARMENITA FORD TRUCK SALES, 192 CAL. APP. 3D 1143
> Cal. Jury Instructions - Civil No. 9.00.7 (Seventh ed. 1986), regarding products liability, strict liability in tort, failure to warn provides: a product is defective if the use of the product in a manner that is reasonably foreseeable by the defendant involves a substantial danger that would not be readily recognized by the ordinary user of the product and the manufacturer fails to give adequate warning of such danger.

Plaintiffs were solicited by UBS in California.

Unwarned, plaintiffs entrusted their savings to UBS, oblivious of the dangers.

Pursuant to the *but if* doctrine, plaintiffs allege that they would not have lost their assets had they been properly warned.

The California forum, UBS's forum of solicitation, is the adequate forum for this case.

For all the above arguments and the law supporting them, plaintiffs respectfully ask the court to deny the present motion to dismiss.

Dated: January 3, 2008

Respectfully submitted,

OLIVER HILSENRATH
Plaintiff *PRO SE*

/s/ Oliver Hilsenrath

HANA HILSENRATH
Plaintiff *PRO SE*

/s/ Hana Hilsenrath